DANIELS, Appellee,

v.

FRATERNAL ORDER OF EAGLES AERIE OF TECUMSEH #979, Appellant.

[Cite as *Daniels v. Fraternal Order of Eagles Aerie of Tecumseh #979,* 162 Ohio App.3d 446, 2005-Ohio-3657.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 2004–CA–17.

Decided July 8, 2005.

Jeffrey M. Silverstein, for appellee.

Darrell L. Heckman, for appellant.

BROGAN, Presiding Judge.

{¶ 1} The Fraternal Order of Eagles Aerie of Tecumseh #879 appeals from the judgment of the Champaign County Common Pleas Court upon a jury verdict wherein the plaintiff, Joyce Daniels, was awarded $4,050 upon her breach-of-contract claim, $17,125 upon a wrongful-discharge claim, and attorney fees.

{¶ 2} Joyce Daniels began working as a bartender manager for the Aerie in 1999 and was discharged in August 2002 upon an allegation of theft. After Daniels disputed the grounds for her discharge, she was reinstated in early December 2002 with an agreement that she would be receiving back wages in the amount of $4050. Although the agreement was undated, Daniels alleged that the trustees agreed to pay her the back wages by December 16, 2002. As that date approached, Daniels inquired about the payment because Christmas was approaching. She informed the trustees that she would contact a lawyer if she wasn't paid on time. When Daniels was not paid on the 16th as promised, she contacted attorney Kirk Ellis about a possible lawsuit. Ellis sent a letter on December 18, 2002, to Darrell Daniels, Aerie secretary, informing him that Daniels would file suit if she did not receive the entire amount of her back pay within seven days. Daniels was terminated on December 24, 2002, for "insubordination" and for being "untrustworthy." Daniels filed suit on September 16, 2003, seeking damages from the Aerie for "bad faith" breach of contract and wrongful discharge.

{¶ 3} At trial, Frank Daniels Jr., a trustee of the Aerie, was called for cross-examination by the plaintiff. Frank testified that he signed the agreement to reinstate Daniels to her former job and to pay her $4,050 in back pay. Frank stated that the agreement was signed in early December 2002. Frank said that Daniels was not paid the back pay because the trustees learned that she was collecting unemployment compensation. Frank testified that Daniels was terminated for taking "overages" out of the cash register. He stated that his niece, Melissa Walborn, informed him of Daniels's improper conduct sometime in the middle of December. Frank testified that he believed Daniels misappropriated about $60. Frank admitted that the trustees never asked Daniels for her version of the overages allegation. Frank also admitted that Daniels asked when she would be paid the back pay due her, but he stated that he told her he didn't know when the trustees could get the money due her. Frank testified that the trustees intended to honor the terms of the agreement to pay the back pay due Daniels but that the original amount would have to be adjusted to reflect the unemployment compensation Daniels received while she was unemployed. Frank did not produce any documentation to show that Daniels ever received any unemployment compensation. He admitted that Daniels threatened to hire a lawyer if she

wasn't paid the back pay due her. Frank testified that Daniels told him to kiss her behind after she was notified by him that she was terminated.

{¶ 4} Daniels testified that the trustees made the agreement on the day she returned to work, namely December 1, 2002. She testified that the trustees told her that she would have her money by December 16, 2002. She testified that as the date for the payment approached, she told the trustees she would contact a lawyer to get the money if she wasn't paid on time. Daniels testified that she was terminated on December 24, 2002, for insubordination for allegedly telling a trustee, Robin Daniels, to "kiss her ass." Daniels admitted that she made that remark to Rob Daniels, a trustee, while she was off duty. She said she made the remark in jest, and in any event, she said that Rob Daniels was not an acting trustee at the time because he was at her table drinking.

{¶ 5} Daniels said that she was also told by Rob Daniels that she was terminated because she allegedly took overages from the cash register. Daniels testified that there were never any overages, and she denied ever taking any money improperly. She also denied ever receiving any unemployment compensation although she applied to receive it.

{¶ 6} At the conclusion of the plaintiff's case, the Aerie moved for a directed verdict. The Aerie argued that Daniels established that she was an employee at will and could be terminated for any reason. The Aerie argued that Daniels had failed to establish that she had been terminated for contacting a lawyer to pursue her claim for back wages. The Aerie noted that Daniels never testified that she thought that she was fired for contacting a lawyer. Daniels argued that there was circumstantial evidence in the record to support her claim that she was terminated for contacting Ellis in violation of Ohio's public policy. The trial court overruled the defendant's motion.

{¶ 7} For the defense, Melissa Walborn testified that she was trained as a new employee by Daniels in December 2002. She testified that on two nights, there were overages in the cash register at the end of the day, and Daniels told her that the overages went into the tip jar, and they would split the overages and consider them tip money. Walborn said that she was trained on the third night by someone else and learned that the overages were not to be treated as tip money, but kept in an envelope for the Aerie. She said that she reported the matter to Frank Daniels, who asked her to make a written statement about Daniels's handling of the overages. Walborn provided the written statement on the same day as her oral statement, which was December 18, 2002.

{¶ 8} Robin Daniels, brother-in-law of Daniels, testified that he was a trustee of the Aerie at the time that the Aerie agreed to pay Daniels the $4,050 in back pay. He testified that he signed a letter to Darrell Daniels, the secretary of the Aerie, rescinding the agreement to reinstate Daniels because Darrell Daniels had failed

to provide all the "pertinent information for [them] to make an informed decision." That letter was dated December 17, 2002. Robin testified that he did not know Daniels was receiving unemployment compensation when the Aerie agreed to pay her the $4,050 in back pay. Robin explained he didn't object to reinstating Daniels but he was objecting to the amount due her for back pay.

{¶ 9} Darrell Daniels also testified that he signed a letter dated December 16, 2002, to Joyce Daniels informing her she was terminated for "untrustworthy behavior" and "insubordination." Darrell stated that he decided to terminate Daniels because she was disrespectful to him and because of Walborn's statement that Daniels improperly treated overages as tips.

{¶ 10} On cross-examination, Darrell Daniels insisted that the termination letter was signed on December 16 despite the fact Walborn did not sign her written statement until December 18, 2002, and the December 17 letter to Darrell Daniels concerning back pay made no mention of terminating Daniels. He also admitted that he had no information about how much unemployment compensation Daniels had received while unemployed from August to December 2002.

{¶ 11} In rebuttal, Joyce Daniels testified that she was presented with an employee handbook in August 2002. The handbook provided that the employee would be progressively disciplined for misconduct.

{¶ 12} In its first assignment of error, the Aerie contends that the trial court erred in denying its motion for a judgment notwithstanding the verdict as to the second count of the complaint, which alleged that the Aerie's refusal to pay her back pay constituted bad faith. In aid of its assignment, the Aerie argues that Daniels was an employee at will, and there was insufficient evidence that she was fired for contacting a lawyer. The Aerie concedes that plaintiff claimed a contract damage of $4,050, which she won and "which * * * is not being challenged on appeal." Since count two of the second claim for relief related to the bad faith breach-of-contract that the Aerie does not contest occurred, this first assignment of error must necessarily be overruled. If the appellant meant to refer to the third claim for relief, the assignment must also be overruled. Pursuant to Civ.R. 50(B), where there has been a verdict for the plaintiff, the test to be employed by the trial court in determining whether to sustain a motion for judgment notwithstanding the verdict is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the plaintiff. *Cataland v. Cahill* (1984), 13 Ohio App.3d 113, 13 OBR 131, 468 N.E.2d 388. Construing the evidence most strongly in Daniel's favor, the trial court properly overruled the defendant's motion. The first assignment of error is overruled.

{¶ 13} In its second assignment, the Aerie contends that the jury's verdict as to count two of the complaint was against the manifest weight of the evidence. In aid of this assignment, appellant argues that the judgment that plaintiff was terminated for contacting a lawyer was against the manifest weight of the evidence. We will assume that the Aerie was actually referring to the third count in the complaint, which refers to the wrongful-termination claim. The Aerie notes that it notified Daniels on December 16 that it was terminating her, and Ellis did not send the threat-of-suit letter until December 18. Robin Daniels, however, testified that the trustees did not decide to terminate Daniels until after they reviewed Walborn's letter of December 18.

{¶ 14} In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, the Ohio Supreme Court held that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Id., paragraph one of the syllabus.

{¶ 15} The First District Court of Appeals has held that Ohio law does not allow a person to be fired solely for consulting a lawyer. *Chapman v. Adia Serv., Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604. In that case, the court held that a temporary services company's admission that it placed a managerial employee on paid leave of absence and attempted to transfer her to another branch because the company's client believed that keeping the employee on the client's account would create a conflict of interest in that the employee had consulted a lawyer about a possible tort claim against the company's client was sufficient to establish that the employee's alleged constructive termination was motivated by conduct relating to public policy. In *Chapman*, it was uncontested that the defendant removed the plaintiff from a valuable account and placed her on a paid leave of absence because she threatened to file a lawsuit against the defendant's client.

{¶ 16} The court in *Chapman* noted that the Ohio Supreme Court has recognized that a person can be terminated wrongfully in violation of public policy, citing *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653. The appellate court then held that it is repugnant to the public policy of this state for employers to terminate employees for exercising their right to consult a lawyer. Judge Painter noted that "the courthouse door must be open to the people of Ohio, and it is not ajar when citizens may be fired for entering." Id. at 544, 688 N.E.2d 604.

{¶ 17} In this matter, there was no direct evidence that the Aerie terminated Daniels for consulting a lawyer and threatening suit, but there was

circumstantial evidence that that was the motivation behind the defendant's decision to terminate her.

{¶ 18} In this case, the jury knew that Daniels had been a long-time employee who had a good work record and who had been wrongfully terminated on a previous occasion by the Aerie. They also knew that the Aerie had a progressive-discipline policy, yet Daniels was terminated for allegedly misappropriating $60 and for calling a trustee an obscene name. The jury also apparently did not believe that the Aerie had decided to terminate on December 16, as indicated on defendant's exhibit C, since Rob Daniels testified that the trustees did not make the decision to terminate Daniels until it reviewed Walborn's written statement, which was given on December 18, 2002.

{¶ 19} The appellant's second assignment of error is overruled.

{¶ 20} In its third assignment, the Aerie contends that the trial court erred in overruling its objection to the court's instruction of the requirement of "overriding business justification" to terminate Daniels. The trial court gave the wrongful-discharge instruction found at Ohio Jury Instructions 302.17. The instruction provides a definition of the elements of a public-policy tort found in the Supreme Court's opinion in *Collins v. Rizkana*, supra,—namely, that a clear public policy prohibiting the employee's conduct existed, the discharging of employees under circumstances like those involved in the plaintiff's discharge would jeopardize the public policy, the plaintiff's discharge was motivated by conduct relating to the public policy (e.g., plaintiff's contacting a lawyer and threatening suit), and finally, the employer lacked an overriding business justification for plaintiff's discharge.

{¶ 21} Although appellant contends that the instruction provided by Ohio Jury Instruction 302.17 carries the public-policy exception beyond what is necessary and reasonable, the instruction clearly comports with Supreme Court precedent. The third assignment of error must be overruled.

{¶ 22} In his fourth assignment, the Aerie contends that the evidence was insufficient to support an award of punitive damages. The jury awarded Daniels one dollar in punitive damages. In Ohio, punitive damages are awarded only upon a finding of actual malice. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 652, 635 N.E.2d 331. "Actual malice" has been defined as that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter certain conduct. *Preston,* 32 Ohio St.3d at 335, 512 N.E.2d 1174. In *Moskovitz,* 69 Ohio

St.3d 638, 635 N.E.2d 331, the Supreme Court held that an intentional alteration, falsification, or destruction of medical records by a doctor is sufficient to show actual malice, and punitive damages may be awarded in such a case. Justice Douglas noted, "If the act of altering and destroying records to avoid liability is to be tolerated in our society, we can think of no better way to encourage it than to hold that punitive damages are not available in this case." *Moskovitz*, 69 Ohio St.3d at 651, 635 N.E.2d 331. In this case, the jury found that there was sufficient circumstantial evidence to support a finding that the Aerie had retaliated against Daniels for threatening to sue it over the overdue back pay. Punitive damages would serve to deter such retaliatory conduct. Accordingly, the evidence supports the jury's award of punitive damages. The fourth assignment of error is overruled.

{¶ 23} The judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF and DONOVAN, JJ., concur.