[Cite as *CARE Risk Retention Group v. Martin*, 2012-Ohio-1426.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

                               :

CARE RISK RETENTION GROUP
       Plaintiff-Appellant       :    C.A. CASE NO. 24791

vs.                              :    T.C. CASE NO. 07-CV-3734

                               :    (Civil Appeal from
DERRICK MARTIN, M.D., et al.           Common Pleas Court)
       Defendants-Appellees     :

               . . . . . . . . .

               O P I N I O N

        Rendered on the 30th day of March, 2012.

               . . . . . . . . .

James S. Oliphant, Atty. Reg. No. 0023086, Kendall Verrett Shaw,
Atty. Reg. No. 0076556, 41 South High Street, Suite 2900, Columbus,
OH 43215
       Attorneys for Plaintiff-Appellant

Dwight D. Brannon, Atty. Reg. No. 0021657, 130 W. Second Street,
Suite 900, Dayton, OH 45402
       Attorney for Intervening Defendants-Appellees

Charles McKinney, 137 North Main Street, Suite 618, Dayton, OH
45402
       Attorney for Defendants-Appellees

               . . . . . . . . .

GRADY, P.J.:

        {¶ 1}  Plaintiff, CARE Risk Retention Group ("CARE Risk"), appeals from an order

granting a motion for summary judgment filed by Intervening Defendants Iva Burnett,

individually and as executor of the estate of Floyd Burnett, Rebecca Osborn, and Shawn Burnett ("the Burnetts").

{¶ 2} A thorough recitation of the pertinent facts is set forth in our prior opinion, *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214. For purposes of clarity and convenience, we will repeat a few of the pertinent facts.

{¶ 3} In the summer of 2005, Derrick Martin, M.D., performed gastric surgery on Floyd Burnett, who developed a postoperative leak, which was immediately repaired. After being discharged to the care of a home nurse, Floyd Burnett was readmitted to the hospital and died of a massive coronary, less than one month after surgery. At the time, Dr. Martin was insured against medical malpractice liability by ProAssurance.

{¶ 4} In October and November of 2005, Dr. Martin received letters from attorney Dwight Brannon, who stated that he represented "Floyd C. Burnett, deceased." In November of 2005, Dr. Martin spoke to an insurance agency about obtaining bariatric malpractice coverage. Ultimately, Dr. Martin selected CARE Risk as his insurer.

{¶ 5} Dr. Martin completed the CARE Risk insurance application in February of 2006. Dr. Martin stated that he was unaware of any claims against him. In April of 2006, CARE Risk issued a policy of insurance to Dr. Martin as the named insured. The term was from April 11, 2006, to April 11, 2007. The policy is a claims-made policy that covers claims for professional services rendered after the retroactive date for coverage in the declarations, July 11, 2003, that were first made against the insured and reported to CARE Risk during the policy period, April 11, 2006, to April 11, 2007.

{¶ 6}   In July of 2006, the Burnetts commenced an action against Dr. Martin and Martin Surgical Associates, L.L.C., which is an additional insured on the policy, alleging that Dr. Martin committed negligence and medical malpractice in connection with gastric surgery performed on Lloyd Burnett in August of 2005, during the retroactive coverage period.

{¶ 7}   CARE Risk canceled Dr. Martin's insurance policy in December of 2006, claiming material misstatements were made by Dr. Martin concerning prior claims, relying on the letters to Dr. Martin from Attorney Brannon.   In May of 2007, CARE Risk filed a declaratory judgment action against Dr. Martin, arguing that Dr. Martin's material misrepresentations rendered the policy of insurance void.   The trial court permitted the Burnetts to intervene in the declaratory judgment action.   Both the Burnetts and CARE Risk filed motions for partial summary judgment.

{¶ 8}   The trial court granted summary judgment to CARE Risk, finding that the professional liability policy issued to Dr. Martin was void ab initio due to misstatements made by Dr. Martin in his application concerning prior claims.   The Burnetts filed a timely notice of appeal from that order.   On appeal, we concluded, at ¶ 3 of our opinion, that "Dr. Martin's statements in the application of insurance are representations, not warranties that void the policy ab initio."   Consequently, we reversed the trial court's grant of summary judgment in favor of CARE Risk and remanded the cause for further proceedings consistent with our opinion.

{¶ 9}   On remand, the Burnetts moved for partial summary judgment and for declaratory judgment under R.C. 2721.03 with regard to whether Dr. Martin has medical malpractice insurance coverage under the CARE Risk policy for the claims made by the

Burnetts. On March 28, 2011, the magistrate granted the Burnetts' motion for partial summary judgment, concluding:

> Whether the statements of Dr. Martin were reckless, negligent, or intentionally false does not matter because the Court of Appeals determined as a matter of law that the statements were representations and not warranties. Because a claim has been made against the policy, under the controlling cases of *Boggs* and *Davidson*, Care Risk may only cancel the policy prospectively, as a matter of law.

{¶ 10} CARE Risk filed objections to the magistrate's decision. On May 27, 2011, the trial court, relying on the first paragraph of the syllabus in *Allstate Ins. v. Boggs*, 27 Ohio St.3d 216, 271 N.E.2d 855 (1971), and our December 10, 2010 opinion, overruled the objections and granted summary judgment to the Burnetts on their counterclaim for declaratory judgment. Upon motion of CARE Risk, the trial court certified its May 27, 2011 order as a final, appealable order and found that there was no just cause for delay pursuant to Civ.R. 54. CARE Risk filed a timely notice of appeal from the trial court's order, raising the following assignment of error:

{¶ 11} "THE TRIAL COURT ERRED IN GRANTING THE BURNETTS' MOTION FOR PARTIAL SUMMARY JUDGMENT."

{¶ 12} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review

means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 13} In *Allstate Ins. v. Boggs*, 27 Ohio St.3d 216, 218-219, 271 N.E.2d 855 (1971), the Supreme Court explained the importance of distinguishing between warranties and representations in the insurance context:

> The consequences of a misstatement of fact by an insured are entirely different, depending on whether the statement is a warranty or a representation. If the statement is a warranty, a misstatement of fact voids the policy ab initio. However, if the statement is a representation, a misstatement by the insured will render the policy voidable, if it is fraudulently made and the fact is material to the risk, but it does not void the policy ab initio.

{¶ 14} In our February 10, 2010 opinion, we concluded that the alleged misstatements concerning prior claims made by Dr. Martin were representations rather than warranties. CARE Risk concedes that our conclusion that Dr. Martin's alleged misstatements of fact are representations rather than warranties represents the law of the case and the court and the parties are bound by this conclusion. The fact that Dr. Martin's alleged misstatements of fact are not warranties means that CARE Risk may rely on the misstatements to prospectively cancel its insurance policy with Dr. Martin, if the misstatements are shown to be material to the risk and fraudulently made. However, CARE Risk cannot use the misstatements to retroactively avoid coverage under the insurance policy after the underlying liability has been incurred. *Boggs* at paragraph one of the syllabus. Consequently, the trial court did not err

in granting summary judgment to the Burnetts.

{¶ 15} CARE Risk argues, however, that our statement at ¶ 76 of our prior opinion precludes the trial court from granting summary judgment to the Burnetts on the issue of coverage. We stated, at ¶ 76:

> We agree with the Burnetts. Whether Dr. Martin made a representation in bad faith is an issue for the trier of fact to decide. Under *Legler*, a defense to a suit on the insurance policy or bond is that an applicant's statements were intentionally false or were recklessly or negligently made without reasonable grounds to believe the statements were true. 88 Ohio St. at 338, 103 N.E. 897.

{¶ 16} *Legler* held that the several provisions of a surety bond application in that case prevented a finding that the applicant's innocent misstatements rendered the bond void, and that the truth of the matter "would be no defense to a suit upon the bond, unless it further appears that such statements were intentionally false or were recklessly or negligently made without any reasonable grounds on the part of the [applicant] to believe that said statements were true, and without reasonable effort on his part to make use of the means at hand to discover the truth or falsity of the statements." *Legler v. U.S. Fidelity & Guaranty Co.*, 88 Ohio St. 336, 337, 103 N.E. 897 (1913).

{¶ 17} The defenses mentioned in *Legler* are available to a surety that cancels a bond or refuses to perform, in a suit filed by the principal and/or a person aggrieved by the principal's conduct. In either event, the "defenses" apply to voidability of the contract at the election of the surety. As explained in *Boggs*, when a contract is not void but voidable, its

voidability "may not be used to avoid liability arising under a policy after such liability has been incurred." In short, while the holding in *Legler* provided an additional reason to overrule CARE Risk's motion for summary judgment on the issue of coverage in the prior appeal, it does not provide a reason to overrule the Burnetts' motion for summary judgment in this appeal.

{¶ 18} The assignment of error is overruled. The judgment of the trial court will be affirmed.


FAIN, J., And FROELICH, J., concur.


**Copies mailed to:**

**James S. Oliphant, Esq.**
**Kendall Verrett Shaw, Esq.**
**Dwight D. Brannon, Esq.**
**Charles McKinney, Esq.**
**Hon. Steven K. Dankof**