[Cite as *Stephens v. Grange Mut. Ins. Co.*, 2012-Ohio-4980.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

DARLENE STEPHENS              :

    Plaintiff-Appellant          :          C.A. CASE NO.   2011 CA 102

v.                            :          T.C. NO.    06CV700

GRANGE MUTUAL INSURANCE CO.,   :          (Civil appeal from
et al.                                    Common Pleas Court)

    Defendant-Appellee           :

                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___26th___ day of ___October___, 2012.

. . . . . . . . . .

RICHARD W. SCHULTE, Atty. Reg. No. 0066031 and STEPHEN D. BEHNKE, Atty. Reg. No. 0072805, 812 East National Road, Suite A, Vandalia, Ohio 45377
    Attorneys for Plaintiff-Appellant

JAMES L. SCHULLER, Atty. Reg. No. 0003234, 3450 W. Central, Suite 242, Toledo, Ohio 43606
    Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** This matter is before the Court on the Notice of Appeal of Darlene Stephens

and Leslie Daniel, filed December 29, 2011. They appeal from the trial court's November 30, 2011 decision granting summary judgment in favor of Grange Mutual Insurance Company ("Grange"). We hereby affirm the trial court's judgment.

{¶ 2} On August 24, 2002, Daniel failed to yield the right of way and struck Stephens' vehicle, causing serious injury to Stephens. Daniel was intoxicated at the time of the accident. Stephens sued Daniel, and following trial, the jury awarded Stephens $31,478.50 in compensatory damages, and $20,000.00 in punitive damages. Grange is Daniel's auto insurance carrier.

{¶ 3} On May 30, 2006, Stephens and Daniel filed a complaint against Grange, in which they asserted that Daniel assigned his rights as against Grange to Stephens[1], and that Daniel was insured under a policy that provided bodily injury liability coverage in the amount of $100,000.00 per person, and $300,000.00 per occurrence. According to the complaint, Grange acted in bad faith "in its investigation, evaluation and attempt to protect Daniel from personal liability." The complaint further alleged that only $31,478.50 of the judgment in favor of Stephens has been satisfied, and the remaining $20,000.00 is the uninsured and personal responsibility of Daniel. Stephens sought compensatory damages in the amount of $20,000.00, to satisfy the punitive judgment award in her favor, and Stephens and Daniel further sought compensatory damages in the amount of $40,000.00, and punitive damages in the amount of $50,000.00, "as a result of Defendant's egregious bad faith."

{¶ 4} In July, 2006, Stephens and Daniel noticed the submission of interrogatories and request for production of documents to Grange, and in August, 2006,

---

[1]There is no evidence of this assignment in the record before us.

Grange noticed the submission of its first set of interrogatories, requests for production of documents, and requests for admission to Stephens and Daniel. An agreed entry was subsequently filed granting Stephens and Daniel, and Grange, until November 9, 2006 to respond to the discovery requests.

{¶ 5}    On September 11, 2006, Grange filed a "Motion for Disqualification and Stay of Discovery," in which it asserted that a conflict of interest existed, in that Matthew Jewson, who represented Grange in the underlying litigation, was currently employed at the firm representing Daniel and Stephens.  On October 18, 2006, the court issued an entry providing that, subsequent to the filing of Grange's motion, substitute counsel from a different firm entered an appearance on behalf of Stephens and Daniel.  The court determined that the matter of disqualification was moot and ordered that discovery proceed.

{¶ 6}    On January 29, 2007, Grange filed a motion for summary judgment, in which it argued that it acted in good faith during settlement negotiations in the underlying action, and further that Ohio law prohibits insurance coverage for punitive damages. Attached to the motion is the affidavit of Don Hammond, a litigation specialist at Grange, who was primarily responsible for handling Stephens' claim, as well as the affidavit of Paul Winterhalter, an attorney and partner at Pickrel, Schaeffer and Ebeling, who handled Daniel's defense at the request of Grange.  According to Hammond, Stephens' original settlement demand was $60,000.00, before suit was filed, and the demand was increased to $75,000.00 after Stephens filed her complaint. Hammond avers that Grange offered $28,000.00 to settle the matter before trial.  After Stephens refused to negotiate, Hammond avers that he made a final settlement offer of $30,000.00.  Hammond states that Grange had

no obligation to negotiate or pay punitive damages to Stephens. The affidavit concludes as follows:

> Given the jury verdict of $31,478.50 (compensitive (sic) damages), the very close assessment of that verdict as reflected in Grange's settlement offer of $30,000.00 prior to trial, and the substantial earlier offer of $28,000 seven months before trial, I believe that my assessment of the case, in conjunction with the advice of counsel, was not only reasonable but also made in good faith, and was quite accurate.

**{¶ 7}** Winterhalter's affidavit is consistent with Hammond's, and it provides that Winterhalter advised Daniel at all times that Grange was not obligated to negotiate or pay punitive damages on Stephens' claim. The following exhibits are also attached to the motion: correspondence dated April 30, 2004, from counsel for Stephens, to Scott Feltner, an insurance adjuster at Grange, seeking settlement in the amount of $60,000.00, and requesting that Feltner "advise me if you are able to increase your offer beyond the $25,420.00 you have already extended"; correspondence dated March 30, 2005, to Hammond, from Winterhalter, indicating receipt of a demand from Stephens in the amount of $75,000.00, and further indicating an offer in response, in the amount of $28,000.00, "which is $3,000 above collosus"; the verdict form in the underlying litigation, along with an interrogatory indicating compensatory damages in the amount of $31,478.50; the September 19, 2005 judgment entry awarding Stephens $31,478.50 in compensatory damages and $20,000.00 in punitive damages; correspondence from counsel for Stephens dated August 23, 2005, to Jewson, at Pickrel, Schaeffer and Ebeling, which states "I am rather sure that

Mr. Daniel will readily find counsel to pursue an extra contractual claim if he knows this case could have likely settled for $50,000.00," and that undersigned counsel "would strongly recommend" that Stephens accept settlement in the amount of $50,000.00; a copy of a portion of Daniel's Personal Auto Policy with Grange, which provides in part: "Regardless of any other provision of this policy, we do not provide coverage for punitive or exemplary damages, or any legal fees or costs associated with them."; correspondence dated August 3, 2005, to Daniel from Jewson, in which Jewson introduces himself as the attorney who will try the matter at Winterhalter's request. The letter provides in part, "* * * any judgment against you in this case for punitive damages, as opposed to damages for bodily injury within policy limits, may not be covered by insurance," and Jewson concludes by advising Daniel that he has the right to retain a lawyer of his own choosing.

{¶ 8}   On January 29, 2007, Grange filed notice that it responded to Stephens' and Daniel's written requests for discovery on January 29, 2007. On February 5, 2007, the Magistrate issued an order notifying the parties that the motion for summary judgment would be decided on February 26, 2007.

{¶ 9}   An agreed entry extending the time for Stephens and Daniel to respond to the motion for summary judgment, until March 5, 2007, was filed on February 21, 2007. On March 5, 2007, Stephens and Daniel filed a motion to continue the deadline for their response, in which they asserted that, having received written discovery responses, they "need to take the depositions of * * * Paul Winterhalter and one or more of the four individuals who worked on the bodily injury claim in this matter. These depositions are necessary to assist Plaintiffs in their analysis of whether Defendant acted in bad faith in the

handling of this claim. " On March 12, 2007, the Magistrate issued an order which provides that Stephens and Daniel "are hereby granted an extension of three months, until June 15, 2007, to complete discovery" and respond to the motion for summary judgment.

{¶ 10} On March 16, 2007, Grange filed a motion for protective order and a response to the motion to continue deadline, and Stephens and Daniel opposed Grange's motion for protective order. Grange replied in support of its motion for protective order. On April 11, 2007, the trial court overruled Grange's motion for protective order.

{¶ 11} On June 22, 2007, the parties filed a "Motion for Agreed Entry for Extension of Time to Respond to Motion for Summary Judgment," in which they asserted that due to the busy trial schedule of counsel for Stephens and Daniel, depositions could not be scheduled prior to June 15, 2007, and that the parties "have tentatively set the depositions" for August 24, 2007. The trial court granted the parties' request for an order allowing Stephens and Daniel until August 31, 2007 to oppose summary judgment. On July 25, 2007, Stephens and Daniel noticed the depositions of Donald Hammond and Robin Schwartz-Harris for August 24, 2007.

{¶ 12} On August 31, 2007, Stephens and Daniel filed a second motion to continue the deadline, arguing that more time was needed to depose Winterhalter, Jewson, and Feltner. The motion provides in part that undersigned counsel served as "co-counsel in a two-week quadruple wrongful death trial," from March 19 - 29, 2007, and also served as "co-lead counsel on a two-week class action trial," from April 16- 30, 2007. The motion asserts that undersigned counsel was unable to schedule depositions until June 8, 2007, and that two depositions (of Schwartz-Harris and Hammond) were then scheduled over two

months away, "because of difficulty scheduling on the calendar of the adjusters themselves." According to the motion, "[t]wo business days later," undersigned counsel notified Grange that it wanted to depose Winterhalter, Jewson and Feltner. The motion concludes, "Not only is undersigned counsel unaware of any 'deadline for completing discovery,' but defense counsel has repeatedly blocked Plaintiffs' attempts to conduct depositions after they received responses to written discovery."

{¶ 13} Attached to the motion is the affidavit of Richard Schulte, counsel for Stephens and Daniel, which provides that he has "reviewed the items contained in this Motion and they are true and accurate to the best of my knowledge," and that he is "not making this Motion to unduly delay these proceedings or for any other improper purpose." Also attached to the motion is email correspondence, dated August 28, 2007, from the office of counsel for Stephens and Daniel, requesting to depose the above three individuals, as well as the response from the office of Grange's counsel, dated August 29, 2007, which provides in part: "* * * we cannot consent to additional depositions. The deadline for completing discovery passed many months ago and your office made no attempt to schedule these depositions within that timeline. We consented to the late depositions of Robin Schwartz-Harris and Don Hammond." Finally, the correspondence provides, " * * * your office did not seek to depose any additional persons at that time despite the fact that you were in possession of the entire Grange Claims file and were fully aware of any involvement of the individuals you now request to depose." On September 10, 2007, Stephens and Daniel noticed the depositions of Winterhalter and Jewson for October 12, 2007.

{¶ 14} On September 11, 2007, Grange responded to Stephens' and Daniel's

second motion to continue the deadline to oppose summary judgment, and it asserted that it sent counsel for Stephens and Daniel a letter dated April 17, 2007, stating that it would cooperate in arranging the depositions during the month of May. According to Grange, counsel for Stephens and Daniel did not contact Grange until one week before the June 15, 2007 deadline. A copy of the April 17, 2007 correspondence is attached to the response, and it provides: "In light of the court's ruling, please advise whom you wish to depose and I will make the arrangements. Your deadline for doing this is June 15th, and I think that is plenty of time. I will cooperate in arranging the depositions during the month of May." Also attached to the response is a copy of email correspondence, dated June 8, 2007, from counsel for Stephens and Daniel, to counsel for Grange, requesting a continuance of the deadline. The email specifically indicates that Stephens and Daniel wanted to depose Robin [Swartz-]Harris and Don Hammond, and that "[d]ue to your busy June calendar, the first day that both attorneys had available was June 25 and June 27."

{¶ 15} On September 12, 2007, the trial court granted the second motion to continue deadline in part, extending the deadline for response to the motion for summary judgment until September 24, 2007, but terminating discovery. On September 20, 2007, Stephens and Daniel replied to Grange's response to their second motion to continue deadline. On October 10, 2007, Grange filed a motion to quash the subpoenas issued to Winterhalter and Jewson.

{¶ 16} On November 26, 2008, the trial court ordered Stephens and Daniel to show cause why their claims against Grange should not be dismissed, and on December 4, 2008, they responded, asserting that their second motion to continue deadline as well as

Grange's motion for protective order were still pending before the court. On June 25, 2009, Grange filed a "Motion for Ruling and/or Hearing and/or Pretrial Conference," and the trial court scheduled the matter for a telephone scheduling conference before the Magistrate on November 29, 2011.

{¶ 17}   On November 30, 2011, the trial court granted Grange's motion for summary judgment as follows:

> * * * In particular, the Court finds defendant's argument that its pre-trial settlement offer of $30,000.00 constituted a good-faith effort to settle the claim, persuasive. Therefore, for the reasons set forth in [Grange's] Motion for Summary Judgment, and based upon the Rule 56 evidence submitted in support thereof, the Court hereby grants Summary Judgment in favor of the defendants.

{¶ 18}   Stephens and Daniel assert two assignments of error. Their first assignment of error is as follows:

"THE LOWER COURT ERRED WHEN IT DENIED APPELLANTS' SECOND MOTION TO CONTINUE THE DEADLINE TO RESPOND TO GRANGE'S MOTION FOR SUMMARY JUDGMENT."

{¶ 19}   Civ.R. 56(F) provides:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit

affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 20} As this Court noted in *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867:

Pursuant to Civ.R. 7[B], the grounds for a Civ.R. 56(F) motion for a continuance must be stated with particularity. In addition, Civ.R. 56(F) requires the motion to be supported by an affidavit containing "sufficient reasons why (the nonmoving party) cannot present by affidavit facts sufficient to justify its opposition" to the summary judgment motion. *Id*. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment." * * * "There must be a factual basis stated and reasons given within an affidavit why a party cannot present facts essential to its opposition to the motion." * * *.

A party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment. * * * However, the court must be convinced that there is a likelihood of discovering some such facts. Further, a claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery. * * * ." *Id*., ¶ 40-41.

{¶ 21} "Whether to grant or deny a Civ.R. 56(F) continuance is committed to the

sound discretion of the trial court." *Doriott*, ¶ 52. As the Supreme Court of Ohio determined:

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
>
> A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 22} Having thoroughly reviewed the record before us, including the court's discovery schedule and the multiple extensions of time it granted Stephens and Daniel to engage in discovery, we conclude that the trial court did not abuse its discretion terminating discovery on September 12, 2007, given Stephens' and Daniel's lack of diligence in pursuing the depositions of attorneys Winterhalter and Jewson, and adjuster Feltner. Grange filed its motion for summary judgment at the end of January, 2007, and the identities of these individuals were apparent in either the affidavits supporting summary judgment or the attachments thereto, and counsel for Stephens and Daniel was accordingly aware of their

involvement in the underlying litigation. Grange provided written discovery responses at the end of January, 2007, and the motion was set for decision on February 26, 2007. Pursuant to an agreed entry, the deadline for response was then extended to March 5, 2007. On that date, Stephens and Daniel filed their first Civ.R. 56(F) motion, asserting that they needed to depose Winterhalter and "one or more of the four individuals" who worked on the claim (Hammond, Jewson, Swartz-Harris and Feltner). The magistrate granted an extension of three months, until June 15, 2007, "to *complete* discovery" and respond to the motion for summary judgment. Grange's motion for a stay and protective order was overruled on April 11, 2007, and pursuant to the parties' agreement, the deadline for Stephens' and Daniel's response was again extended, until August 31, 2007. Hammond and Swartz-Harris were deposed prior to that deadline. While counsel for Stephens and Daniel asserted in his second motion that he was consumed in trial from March 19 - 29, 2007, and April 16 - 30, 2007, it is not clear why he was unable to attempt to schedule depositions until June, 2007; in April, 2007, Grange indicated it would cooperate in arranging depositions in the month of May, to comply with the court's then deadline of June 17, 2007. There is nothing to indicate that counsel for Stephens and Daniel attempted to schedule the depositions of Winterhalter, Jewson and Feltner before August, 2007. In fact, in response to the court's order to show cause, Stephens and Daniel responded, "On August 24, 2007, Plaintiffs took the depositions of Don Hammond and Robin Swartz-Harris * * * . Two days later, Plaintiffs' counsel notified Defendant's counsel that they also sought to take the depositions of Paul Winterhalter and Matthew Jewson * * * as well as Scott Feltner." Since Stephens and Daniel did not exercise diligence in seeking discovery, the trial court did not abuse its

discretion in overruling their second Civ.R. 56(F) motion.

{¶ 23}  Stephens' and Daniel's second assignment of error is as follows:

"THE LOWER COURT ERRED WHEN IT GRANTED GRANGE'S MOTION FOR SUMMARY JUDGMENT."

{¶ 24}  As this court has previously noted:

Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. * * * Our review of the trial court's decision to grant summary judgment is de novo.  *Fifth Third Mtge Co. v. Bihn*, 2d Dist. Montgomery No. 24691, 2012-Ohio-637, ¶ 15.

"'De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' * * * Therefore, the trial court's decision is not granted any deference by the reviewing appellate court."  *CARE Risk Retention Group v. Martin*, 2d Dist. Montgomery No. 24791, 2012-Ohio-1426, ¶ 12.

{¶ 25}  "In Ohio, an insurer has a duty to act in good faith toward its insured in carrying out its responsibilities under the policy of insurance. * * * 'An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the

claim is not predicated upon circumstances that furnish reasonable justification therefor.'" *Mundy v. Roy*, 2d Dist. Clark No. 2005-CA-28, 2006-Ohio-993, ¶ 17.

**{¶ 26}** Stephens' and Daniel's complaint alleges that Grange failed to act with "reasonable justification in attempting to settle and resolve claims made against Daniel to protect him from excess judgments." We note that the complaint refers to "the original judgment of $51,478.50," and alleges that only $31,478.50 of that amount has been satisfied, but the complaint does not specify, consistent with the jury verdict, that Stephens was awarded both compensatory damages (in the amount or $31,478.50), as well as punitive damages (in the amount of $20,000.00).

**{¶ 27}** "Compensatory damages are intended to make whole the plaintiff for the wrong done to him or her by the defendant. * * * Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefore." *Fantozzi v. Sandusky Cement Products Co.*, 64 Ohio St.3d 601, 612, 597 N.E.2d 474 (1992).

**{¶ 28}** "Punitive damages are awarded only upon a finding of actual malice. * * * 'Actual malice' has been defined as that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Daniels v. Fraternal Order of Eagles Aerie of Tecumseh #979*, 162 Ohio App.3d 446, 2005-Ohio-3657, 833 N.E.2d 1253 (2d Dist.), ¶ 22. In contrast to compensatory damages, the "purpose of punitive damages is not to compensate the plaintiff, but to punish and deter certain conduct. * * * ." *Id.* Punitive damages are not insurable, and the use of insurance proceeds to satisfy an award of punitive damages is against public policy. R.C. 3937.182;

*Ruffin v. Sawchyn,* 75 Ohio App.3d 511, 599 N.E.2d 852 (8th Dist. 1991). Further, the portion of Daniel's policy attached to Grange's motion for summary judgment excludes coverage for punitive or exemplary damages, and in their responses to Grange's request for admissions, filed August 31, 2006, Stephens and Daniel admit that Grange "had no contractual obligation to pay punitive damages under the terms of the insurance policy issued to" Daniel.

{¶ 29} Construing the evidence most strongly in favor of Stephens and Daniel, we agree with Grange that there is no evidence that it acted in bad faith in negotiating Stephens' compensatory damages. Hammond's and Winterhalter's affidavits establish that Grange offered to settle the matter for $28,000.00 seven months before trial. Winterhalter's affidavit establishes that Stephens then increased her original demand of $60,000.00 to $75,000.00. Winterhalter's affidavit provides that a week before trial, Stephens requested that Daniel increase his settlement offer to $50,000.00 but Stephens refused to decrease her demand. Hammond's affidavit establishes that Grange increased its offer to $30,000.00. Compensatory damages were awarded by the jury in an amount only $1,478.50 more than Grange's final offer.

{¶ 30} The record reflects that Grange satisfied its initial burden of demonstrating the absence of a genuine issue of material fact regarding Stephens' and Daniel's bad faith claim. In response, Stephens and Daniel failed to set forth specific facts demonstrating a genuine issue for trial; Stephens and Daniel did not respond to Grange's motion for summary judgment, and when ordered to show cause, they responded that they "await an order from this Court as to whether it may conduct additional discovery." However, on

September 12, 2007, the court granted Stephens and Daniel until September 24, 2007, to respond to the motion and further ordered that "[n]o additional discovery will be permitted prior to a ruling on the Motion for Summary Judgment."

{¶ 31} Construing the evidence most strongly in favor of Stephens and Daniel, we conclude that the trial court properly entered summary judgment in favor of Grange, and their second assignment of error is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . .

VUKOVICH, J., concurs.

HALL, J., concurring:

{¶ 32} While driving under the influence of alcohol, Daniel failed to yield the right of way to Stephens. Daniel struck Stephens's car and injured Stephens. A jury awarded Stephens $31,478.50 in compensatory damages and $20,000 in punitive damages. Daniel had an auto insurance policy with Grange, and Grange provided him with defense counsel. The coverage provided by the policy was more than enough to satisfy the compensatory-damage award. But the policy did not cover the punitive-damage award. R.C. 3937.182, and our case law, prohibit a policy from doing so. R.C. 3937.182(B) ("No policy of automobile or motor vehicle insurance * * * shall provide coverage for judgments or claims against an insured for punitive or exemplary damages."). Daniel assigned to Stephens his right to bring a claim against Grange for failing to protect him from personal liability resulting in the punitive damage award.

{¶ 33} The evidence that Daniel was intoxicated formed the basis of the punitive damage award. Undoubtedly, Grange had an obligation to consider the effect that this

evidence could have had on the compensatory damage award. But Grange was not obliged to consider whether to make a greater settlement offer solely in order to shield Daniel from the potential of punitive damage liability. As a matter of law, if compensatory damage exposure, and eventual judgment, is well within policy limits, an insurer need not consider whether to make a greater settlement offer solely to shield the insured from a punitive damage judgment.

{¶ 34} I agree with my colleagues and concur in affirming the judgment of the trial court.

. . . . . . . . . .

(Hon. Joseph J. Vukovich, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Richard W. Schulte
Stephen D. Behnke
James L. Schuller
Hon. Richard J. O'Neill