DECISION AND JUDGEMENT ENTRY
{¶ 1} Claiming that the trial court's decision is against the manifest weight of the evidence, American Family Insurance (AFI) appeals a judgment finding AFI liable for trespass and conversion of property belonging to Martin Orebaugh. Orebaugh's testimony that he ordered AFI to vacate his property in a letter he sent via mail and fax, and his presentation of phone records showing a fax from his office to AFI's fax number constitute competent, credible evidence that AFI trespassed on Orebaugh's property by remaining there after Orebaugh requested its employees to leave. Additionally, Orebaugh's testimony that his digital camera and personal supplies were missing after he reclaimed possession of the building constituted competent, credible evidence to support the trial court's conclusion that AFI converted Orebaugh's property. *Page 2 
 {¶ 2} AFI also contends that the trial court's award of punitive damages is against the manifest weight of the evidence. Because Orebaugh presented competent, credible evidence, i.e., six facts along with the element of conscious wrongdoing, to establish the defendants "ill will" toward Orebaugh, we disagree.
 {¶ 3} Accordingly, we affirm the judgment for trespass, conversion, and punitive damages.
 I. Facts {¶ 4} Following a business dispute between Orebaugh and AFI, Orebaugh filed a complaint alleging trespass and conversion against AFI, Cindy Green and Roger Friedman. A trial to the court produced conflicting evidence that focused largely upon the issue of whether AFI had occupied Orebaugh's office with his permission.
 {¶ 5} The evidence indicated Orebaugh had been an insurance agent for AFI since 1999. In order to operate his business, he rented an office located at 118 N. Washington Street, Greenfield, Ohio, from Thad Gosset. Orebaugh testified that he purchased furniture and supplies in the amount of $1,800 to operate the business.
 {¶ 6} In October, 2002, Orebaugh entered in to a land installment contract with Thad Gossett to purchase the building containing his office. This building also included a separate adjacent office with an address of 120 N. Washington Street. Orebaugh and Gossett agreed on a purchase price of $40,000, and Orebaugh made a down payment of $1,400. The contract also required Orebaugh to make monthly payments of $368.89.
 {¶ 7} In June, 2003, Orebaugh traveled west with his immediate family, his parents, and his in-laws for an extended vacation. Orebaugh planned to stop in Vancouver, British Columbia, during the trip for the annual AFI convention. He *Page 3 
expected to be gone for a couple weeks. While he was away, Orebaugh placed Hollie Fecke and Rachelle Trefz in charge of managing his office.
 {¶ 8} During the trip out west, the motor home in which Orebaugh and his relatives were riding was involved in a motor vehicle accident. The accident prevented Orebaugh from reaching Vancouver in time for the convention. Orebaugh phoned Cindy Green, District Sales Manager for AFI, to inform her that he would not be attending the conference.
 {¶ 9} Orebaugh returned home on Saturday, August 9, 2003. Rachelle Trefz testified that she and Cindy Green made numerous phone calls and left several messages on Orebaugh's answering machine that day requesting him to come to the office. Since Orebaugh did not come to the office, Green decided to go to his home. Once there, Green informed Orebaugh that AFI had terminated his contract, effective immediately.
 {¶ 10} Green informed Orebaugh that the AFI files located in his office were sensitive because they contained confidential customer information. She explained that she had to either move the files from Orebaugh's office or secure the building by changing the locks. Orebaugh testified that he did not respond to Green's request to secure the office, but he did agree to meet her at the office later that day. Green returned to the office and waited for Orebaugh to arrive. Orebaugh never returned to the office that day, so Green moved the company files to Rachelle Trefz's home, where they would be secure. *Page 4 
 {¶ 11} The following Tuesday, August 12, 2003, Orebaugh returned to the office. There he found Roger Friedman, an insurance agent who AFI hired to take over the Orebaugh's insurance practice, working out of his office.
 {¶ 12} Orebaugh and Friedman discussed the possibility of Friedman purchasing the office from him or renting the office. Friedman felt they had reached a rental agreement, but Orebaugh testified the negotiations were unsuccessful. Cross-examination by AFI's counsel concerning the rent discussion led to the following exchange with Orebaugh:
 Q.: You actually told Roger (Friedman) that he could rent the building for a figure of about $500.00, correct?
 A.: I said if it could be rented it would have to be rented for five hundred dollars.
 Q.: So you offered to rent the building for five hundred?
 A.: No, I didn't offer to rent it to him.
 {¶ 13} On August 20, 2003, Friedman had the locks changed on the office at 118 N. Washington Street. He testified that he changed the locks under the belief that he had Orebaugh's permission to secure the building. Friedman testified that Orebaugh could have come to the office to remove his personal effects at any time. Friedman also testified that he told Orebaugh that he could arrange for a convenient time for them to meet at the office after business hours. Orebaugh admitted that he never told Friedman that he was trespassing and must vacate the property.
 {¶ 14} Orebaugh testified that he prepared a letter to Ms. Green on August 26, 2003, informing her that AFI was trespassing on his property located at 118 N. *Page 5 
Washington, and that they should immediately leave the premises. Orebaugh indicated he mailed this letter on August 26, 2003, and faxed it to Green on August 28, 2003. He also produced a phone bill to Ms. Green, and she admitted that it listed her fax number. However, Green denied receiving either the fax or the mailed letter. Ms. Green and Ms. Trefz testified that it was common for multiple faxes to be sent to Ms. Green on a daily basis. Trefz testified that she was present with Orebaugh at the office on August 28, 2003, and at no time did she see him fax anything from facsimile machine located in the office.
 {¶ 15} On September 8, 2003, Friedman attempted to give a rent check to Orebaugh in the amount of $450.00. Friedman testified that Orebaugh refused the check stating that he first needed Friedman to sign a one-year lease agreement. At the end of September, Friedman informed Orebaugh that he was searching for a new location to move the office.
 {¶ 16} On October 3, 2003, Orebaugh met with Ms. Green who attempted to give him a check for two months rent at $450.00 per month ($900.00 total). Orebaugh refused the check and informed Green that he believed she was trespassing. Green testified that this was the first time she had ever been informed that AFI was trespassing. Orebaugh testified that he then re-mailed a copy of the August 26, 2003, letter to Ms. Green. Green testified that she received the letter for the first time on October 6, 2003.
 {¶ 17} Ms. Green phoned Friedman on October 3, 2003, and informed him that they needed to find a new location. AFI acquired a new location on October 8, 2003, and had moved out of the office at 118 N. Washington by October 10, 2003. *Page 6 
 {¶ 18} The court concluded that Orebaugh had established by a preponderance of the evidence that AFI trespassed and converted his property. The court awarded Orebaugh $6,400.00 in compensatory damages and $5,000.00 in punitive damages. The court found that Orebaugh failed to establish that either Ms. Green or Friedman had trespassed or converted Orebaugh's property in their individual capacities.
 {¶ 19} AFI filed a timely appeal and asserts two assignments of error:
I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST DEFENDANT-APPELLANT AMERICAN FAMILY INSURANCE.
II. THE TRIAL COURT ERRED IN AWARDING PUNITIVE DAMAGES TO PLAINTIFF-APPELLEE MARTIN L. OREBAUGH.
 II. Manifest Weight {¶ 20} In its first assignment of error, AFI contends that the trial court's judgment was against the manifest weight of the evidence. Specifically, AFI contends that because it had permission to use the office space, the trial court's judgment that it trespassed and converted Orebaugh's property is not supported by competent, credible evidence.[1]
 {¶ 21} An appellate court will not reverse the decision of a trial court as being against the manifest weight of the evidence if the decision of the trial court is supported by any competent, credible evidence as to all essential elements of a case. State ex. rel. Pizza v.Strope (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765. This standard is highly deferential and "some" evidence is enough to prevent a reversal if it applies to all the essential elements of a case. McCoy v.McCoy (1995), 105 Ohio App.3d 651, 656, 664 N.E.2d 1012. In applying the "some competent credible evidence" standard, we *Page 7 
should not reverse a judgment merely because the record contains evidence that could reasonably support a different conclusion. It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation.
 A. Trespass {¶ 22} AFI contends that the trial court's conclusion that it trespassed on Orebaugh's property is not supported by the evidence. AFI argues that Orebaugh gave it permission to use the office space, and, therefore, did not trespass. Furthermore, AFI contends that Orebaugh visited the premises on numerous occasions and never informed anyone that the company was trespassing. AFI also argues that it never received any notice of its alleged trespassing until October 3, 2003 when Orebaugh informed Green of his position. AFI contends they took possession of the office in the good faith belief they either had a lease or were in the process of negotiating one.
 {¶ 23} "Trespass is the unlawful entry upon the property of another."Chance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17, 24,670 N.E.2d 985. The elements of trespass are "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 716, 622 N.E.2d 1153. *Page 8 
 {¶ 24} Orebaugh testified that he mailed a letter to Ms. Green on August 26, 2003, informing her that AFI was trespassing. He also testified that he faxed the same letter to Ms. Green on August 28, 2003. Ms. Green acknowledged that her fax number appeared on Orebaugh's phone bill on August 28, 2003, but she testified that she never received the letter via fax and only received it via mail on October 6, 2003.
 {¶ 25} After listening to this conflicting testimony, the trial court concluded that Orebaugh had sent a letter informing Ms. Green that AFI was trespassing and ordering AFI to leave the premises immediately. The credibility of a witness is best determined by the trier of fact who viewed that witness, not by a reviewing court upon a paper record.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Here, the trial court was in the best position to determine the credibility of the witnesses and concluded in its findings that Orebaugh had requested AFI to leave the premises in late August. This represents some competent, credible evidence that AFI remained on Orebaugh's property without his permission from August 28, 2003, until October 10, 2003, regardless of whether they were permissive users prior to that time. Because Orebaugh has presented some competent, credible evidence, we affirm the trial court's judgment concerning AFI's trespass.
 B. Conversion {¶ 26} AFI contends that the trial court's conclusion that it converted Orebaugh's property is against the manifest weight of the evidence. However, Orebaugh testified at trial that his digital camera, file folders and other supplies were missing from his office when he regained possession. *Page 9 
 {¶ 27} An act of conversion is any wrongful exercise of dominion over the property of another in exclusion of the rights of the owner or withholding it from his possession under a claim inconsistent with his rights. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96,551 N.E.2d 172, 175. The elements of a conversion cause of action are: (1) plaintiffs ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiffs property rights; and (3) damages. HaulTransport of Va., Inc. v. Morgan (June 2, 1995), Montgomery App. No. 14859, 1995 WL 328995, at 3.
 {¶ 28} The trial court apparently believed Orebaugh's testimony that AFI took his camera and used his supplies without permission. As we stated above, the trial court is in the best position to determine witness credibility. Therefore, we conclude that Orebaugh's testimony represents some competent, credible evidence that AFI converted his property. Accordingly, we affirm the trial court's judgment in that regard. *Page 10 
 {¶ 29} In its second assignment of error, AFI contends that the trial court's judgment awarding punitive damages to Orebaugh is against the manifest weight of the evidence. The court awarded Orebaugh $5,000.00 in punitive damages after finding "active" [sic] malice.
 {¶ 30} R.C. 2315.21(B) permits an award of punitive damages in a tort action where the actions or omissions of a defendant demonstrate "actual malice" and the plaintiff proves actual damages as a result of those actions or omissions. The plaintiff must prove by clear and convincing evidence his right to recover punitive damages. R.C. 2315.21(C). Clear and convincing evidence is that degree of proof which *Page 11 
establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118. In Preston v. Murty (1987), 32 Ohio St.3d 334,512 N.E.2d 1174, syllabus, the Supreme Court of Ohio held that "[a]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." The reason behind awarding punitive damages in Ohio ". . . has been recognized . . . as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct." Detling v. Chockley (1982),70 Ohio St.2d 134, 136, 436 N.E.2d 208, overruled on other grounds in Cabe v.Lunich (1994), 70 Ohio St.3d 598, 640 N.E.2d 159. Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required.
 {¶ 31} Here, Orebaugh presented evidence to show that Ms. Green received notice in late August of 2003 that AFI and its agent were trespassing. Despite this knowledge of wrongdoing, Ms. Green did nothing to remedy the problem over the next month and a half. In addition, Orebaugh presented evidence that the defendants: (1) took over his office without telling him; (2) jimmied his desk drawer open; (3) converted his personal property and equipment to their use; (4) continued to let themselves in without asking Orebaugh for a key; (5) changed the locks to Orebaugh's building so that he had to ask for permission to enter his own building; and (6) when the defendants finally moved out, they took Orebaugh's camera and other personal property. We find that these six facts, combined with the element of conscious wrongdoing (i.e. *Page 12 
knowledge of their wrongdoing for a month and a half) establish competent, credible evidence of the defendants "ill will" toward Orebaugh. Therefore, we find that the trial court's judgment regarding punitive damages is not against the manifest weight of the evidence.
 {¶ 32} Accordingly, we overrule AFI's second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 13 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. and Kline, J.: Concur in Judgment and Opinion. Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error I and Concurs in Judgment Only as to Assignment of Error II
[1] We recognize that AFI might have argued that its rent discussions with Orebaugh created a tenancy at will. However, because AFI failed to present this argument, we will not address it. Nor does AFI contest the amount of compensatory damages in the sum of $6,400. *Page 1