[Cite as *Gindling v. Schiff*, 2012-Ohio-764.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JENNIFER GINDLING, Individually and as Administrator of the Estate of Mary Ann Mattei, deceased, | : | APPEAL NO. C-100669<br>TRIAL NO. A-0404546 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | *O P I N I O N.* |
| | | |
| BRIAN M. SHIFF, M.D., | : | |
| | | |
| LAWRENCE BARTISH, M.D., | : | |
| | | |
| and | : | |
| | | |
| QUEEN CITY GENERAL &<br>VASCULAR SURGEONS, | : | |
| | | |
| Defendants-Appellees, | : | |
| | | |
| and | : | |
| | | |
| THOMAS J. PARKER, M.D., et al., | : | |
| | | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 29, 2012

*The Lawrence Firm, P.S.C., Jennifer L. Lawrence,* and *Anne L. Gilday,* for Plaintiff-Appellant,

*Lindhorst & Dreidame, Michael F. Lyon,* and *Bradley D. McPeek*, for Defendants-Appellees.

Please note: This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}     Plaintiff-appellant Jennifer Gindling, individually and as the administrator of the estate of Mary Ann Mattei, her mother, appeals the judgment of the trial court entered on the jury's verdict in favor of the defendants in her wrongful-death, medical-malpractice action.   Defendants-appellees are surgeons Brian M. Shiff, M.D., Lawrence Bartish, M.D., and Queen City General & Vascular Surgeons (collectively "Shiff and Bartish").

{¶2}     On December 26, 2002, the 61-year-old Mattei was transferred to the intensive care unit of Good Samaritan Hospital in Cincinnati where she came under the care of Shiff, Bartish, and other hospital physicians including pulmonologist Thomas J. Parker, M.D.  Mattei presented with severe abdominal pain, vomiting, and diarrhea.  She was treated with antibiotics and fluids.  Her abdomen was not rigid, and a CT scan did not reveal indications of a perforated colon.  Mattei's condition improved.

{¶3}     But by December 31, Mattei had developed serious respiratory symptoms. Despite treatment by Dr. Parker, Mattei's condition continued to worsen, though the gastrointestinal component of her multiple medical problems appeared to improve.  On January 12, 2003, fearing that Mattei, now on a ventilator, had developed a pulmonary embolism, Shiff and Bartish discovered that her colon had perforated.  Dr. Bartish operated to repair the perforation but Mattei died the day after surgery.

{¶4}     At trial, through her two medical expert witnesses, Gindling presented evidence that Shiff and Bartish had deviated from the standard of care by failing to operate until Mattei "was almost dead."  But Shiff and Bartish presented their own testimony, the testimony of other treating physicians, and the testimony of their own expert witnesses that Mattei's clinical presentation had not called for surgery.  The defense's medical experts testified that paracentesis and colonoscopy were not indicated to treat Mattei's condition, would not have revealed meaningful knowledge, and were not worth the risk that would have been undertaken to perform them.  Dr. Parker testified that due to her

serious condition he would not have "cleared" Mattei for surgery even if Shiff and Bartish had wished to operate.

{¶5} The defense experts corroborated Shiff and Bartish's opinions and rebutted Gindling's primary assertion at trial—that Shiff and Bartish should have operated on Mattei, and that their negligent failure to do so had caused her death. Indeed, Mattei's medical expert, Richard M. Vasquez, M.D., testified on direct examination that Shiff and Bartish had "essentially watch[ed] her die." But the record reveals that 13 physicians or surgeons examined Mattei over 90 times during her 21-day hospitalization, that they performed over 45 examinations of her abdomen, and that they ordered 4 CT scans, 3 abdominal X-ray studies, several chest X-rays, and a thoracentesis, testing the fluid drawn from her thorax for infection that would have shown the existence of peritonitis.

{¶6} Following an 11-day trial, recorded in over 2000 pages of trial transcript, the jury returned a general verdict for the defendants. Gindling then moved for a new trial under Civ.R. 59(A)(2) based upon defense counsel's alleged misconduct, and for judgment notwithstanding the verdict ("JNOV"), advanced on grounds that the jury's verdict was against the manifest weight of the evidence. The trial court ultimately overruled the motions.

{¶7} In two interrelated assignments of error, Gindling now argues that the jury's verdict was influenced by the improper remarks of Shiff and Bartish's trial counsel. Gindling argues that the trial court erred by permitting misconduct by defense counsel, and by not granting a new trial in light of his improper conduct. She focuses her argument on defense counsel's comments in his closing argument, and on his "speaking" objections—making statements in connection with his objections—throughout the trial.

{¶8} On appeal, Gindling directs us to instances throughout the trial where, she alleges, defense counsel engaged in improper conduct. But Gindling failed to object to much of the conduct below—lodging no objection at all during closing argument—thereby depriving the trial court of an opportunity to take corrective action. *See In re Etter*, 134

3

Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998). We review those instances only for plain error, a doctrine that is rarely applied in civil appeals. *See Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. At other points in the trial, the court sustained Gindling's objections to the challenged conduct. She cannot predicate error on objections that have been sustained below. *See Bowden v. Annenberg*, 1st Dist. No. C-040499, 2005-Ohio-6515, ¶ 19.

{¶9} We begin our analysis with the trial court's review of Gindling's motion for a new trial based upon counsel's misconduct. The denial of a motion for a new trial under Civ.R. 59(A)(2) is committed to the trial court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. *See Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus. Where the record supports a trial court's finding that counsel's conduct did not affect the outcome of the trial, an order denying a new trial is not an abuse of discretion. *See Merkl v. Siebert*, 1st Dist. Nos. C-080973 and C-081033, 2009-Ohio-5473, ¶ 26. In reaching this determination we defer to the trial judge, "who witnessed the trial firsthand and relied upon more than a cold record to justify a decision." *Harris v. Mt. Sinai Med. Ctr.,* 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 36.

{¶10} In medical-malpractice trials, expert testimony is essential to prove negligence and causation, and the limitations of an expert's opinion are an appropriate subject for cross-examination and comment. *See Bowden* at ¶ 19, citing *Clark v. Doe*, 119 Ohio App.3d 296, 306, 695 N.E.2d 276 (1st. Dist.1997).

{¶11} We note that Gindling had filed a pretrial motion in limine alerting the trial court to this court's reversal of four previous medical-malpractice judgments involving Shiff and Bartish's defense counsel on the grounds of his prejudicial conduct. But the use of taboo phrases alone will not result in the reversal of a jury's verdict.

{¶12} Here, an experienced trial court carefully supervised a lengthy medical-malpractice trial. Defense counsel's often-heated references to the biases or pecuniary

interest of Gindling's expert witnesses, frequently returned in kind by Gindling's counsel, were based upon the evidence admitted at trial and highlighted legitimate limitations in their testimony. *See Clark*, 119 Ohio App.3d at 306, 695 N.E.2d 276. Since a sound reasoning process supported the trial court's decision that the jury's verdict was not the product of passion and prejudice, the trial court did not abuse its discretion in overruling Gindling's new-trial motion. *See AAAA Enterprises, Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *see also Fehrenbach v. O'Malley*, 1st. Dist. No. C-100730, 2011-Ohio-5481, ¶ 24.

{¶13}  Moreover, nothing in this record suggests that the trial court violated any duty to ensure that counsel's statements were confined to proper limits. *See Pesek v. Univ. Neurologists Assn., Inc.,* 87 Ohio St.3d 495, 721 N.E.2d 1011 (2000). The trial court took an active role in supervising the remarks of both trial counsels. The first and second assignments of error are overruled.

{¶14}  Gindling also argues that the trial court erred in overruling her JNOV motion, claiming that the jury's verdict was against the manifest weight of the evidence. But in conducting a de novo review of the trial court's ruling under Civ.R. 50(B), this court is not permitted to weigh the evidence or to test the credibility of the witnesses. *See Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 46 (1st Dist.). Rather, we must construe the evidence most strongly in favor of the nonmoving party— Shiff and Bartish—and determine whether reasonable minds could have reached a conclusion in favor of them. *See Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976); *see also R&S Distrib. v. Hartge Smith Nonwovens, LLC*, 1st Dist. No. C-090100, 2010-Ohio-3992, ¶ 41.

{¶15}  Through her expert witnesses, Gindling presented evidence that Shiff and Bartish had deviated from the standard of care by failing to operate until Mattei "was almost dead." But Shiff and Bartish presented testimony that Mattei's clinical presentation did not call for surgery, and that Mattei was a critically ill patient for whom

5

the rigors of surgery would have been fatal. We conclude, after viewing the evidence in a light most favorable to Shiff and Bartish, that there was substantial evidence to support their contention and upon which reasonable minds could have differed. *See Merkl v. Seibert, M.D.*, 1st Dist. Nos. C-080973 and C-081033, 2009-Ohio-5473, ¶ 52. The fifth assignment of error is without merit.

{¶16} Gindling next asserts that the trial court erred in permitting defense counsel to employ "criminal terms" during closing argument when he stated that Gindling had accused Shiff and Bartish of "essentially assassinating" Mattei. But Gindling did not make a timely objection to counsel's statement; the comment is subject to review under a plain-error standard. Where, as here, the trial court instructed the jury on the correct burden of proof in a civil trial, we cannot say that counsel's statement so "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process" that we must overturn a jury verdict reached after 11 days of testimony and argument. *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus. The third assignment of error is overruled.

{¶17} Finally, Gindling argues that the trial court should have excluded testimony from defense witness Dr. Parker concerning the dilation of the right atrium and ventricle of Mattei's heart and whether he would have cleared Mattei for surgery, because that testimony had not been previously disclosed.

{¶18} The trial court has broad discretion in the admission of evidence, including expert testimony. *See Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16-22. In light of the substantial other testimony on the appropriateness of surgery and the causes of Mattei's distress, we cannot say that this testimony was the type of dramatic change in testimony that should have been excluded. *See Fetters v. St. Francis/St. George Hosp. Inc.*, 1st Dist. No. C-990410, 2000 Ohio App. LEXIS 999, *12 (Mar. 17, 2000). The trial court did not abuse its discretion in allowing the testimony into evidence, and we overrule the fourth assignment of error.

**{¶19}**     Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J., HENDON** and **CUNNINGHAM, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.