[Cite as *Pepin v. Hansing*, 2013-Ohio-4182.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY


JEFF PEPIN, et al.,
                                                              :

     Plaintiffs-Appellees,          Case No.   13CA3552
                                                              :

     vs.
                                                              :

JERALD HANSING, M.D., et. al.,

     Defendants-Appellants.

DECISION AND JUDGMENT ENTRY

_____

APPEARANCES:

COUNSEL FOR APPELLANT,     Michael L. Close and Dale D. Cook,
JERALD D. HANSING,           Isaac Wiles Burkholder & Teetor, LLC, Two Miranova
                                   Place, Suite 700, Columbus, Ohio, 43215


COUNSEL FOR APPELLEES:      David B. Beck, Harcha, Book & Beck, L.L.C., 800 Gallia
                                   Street, Ste. 800, Portsmouth, Ohio 45662

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-20-13
ABELE, J.

{¶ 1}   This is an appeal from a Scioto County Common Pleas Court judgment in favor of

Jeff Pepin and Hanny Barsoum (plaintiffs below and appellees herein), on their claims against,

inter alia, Jerald Hansing, M.D. (defendant below and appellant herein).   Appellant assigns the

following errors for review:

       FIRST ASSIGNMENT OF ERROR:

       "THE TRIAL COURT ERRED IN OVERRULING DR.
       HANSING'S MOTION FOR JNOV ON THE FRAUD CLAIM
       AS PLAINTIFF'S DID NOT PRESENT SUFFICIENT

EVIDENCE OF THE ELEMENTS OF FRAUD."


SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S ERRED IN OVERRULING DR. HANSING'S MOTION FOR JNOV ON THE CONVERSION CLAIM AS THERE IS NO EVIDENCE THAT DR. HANSING CONTROLLED THE FUNDS CONVERTED."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DR. HANSING'S MOTION FOR NEW TRIAL AND REMITTITUR AS THE DAMAGES WERE EXCESSIVE AND CONTRARY TO LAW."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING DR. HANSING'S MOTION FOR NEW TRIAL AS THE JUDGMENTS AGAINST HIM PERSONALLY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 2} In 1996, Appellant Peter Geissler and Melvin Mpambara founded the Kigezi International School of Medicine (Kigezi). Although Kigezi was a non-profit organization established in the nation of Uganda, most of its academic and clinical education took place in Great Britain. American medical students comprised approximately ninety percent (90%) of the student body. Between 2000 and 2004, appellant was Kigezi's managing director, but he resigned in 2004 and Kighezi ceased to be a viable entity during the 2004-2005 academic year.

{¶ 3} Appellees were Kigezi medical students, but were unable to complete their studies when the school closed. Appellees commenced the instant action and asserting claims in fraud, breach of contract, conversion and negligence against a number of defendants. Dr. Jerald Hansing, apparently the only defendant to enter an appearance in these proceedings, denied

liability on all of the claims.

{¶ 4}   At trial, Appellee Pepin testified that none of his credits would transfer to another school, that he was forced to start medical school from the beginning at St. George's Medical School in Granada, and that he has incurred education debt (attending both schools) of approximately $500,000.   Pepin testified that he completed school and, at the time of trial, is a physician completing an emergency medicine residency at a hospital in the Bronx, New York City.

{¶ 5}   Appellee Barsoum did not appear at trial, but the jury heard his taped deposition. The transcript of Barsoum's deposition reveals that he enrolled at Kigezi in 2001 and remained a student until 2004.   Unlike Pepin, he did not transfer to another medical school and apparently is not working as a physician.   Nevertheless, Barsoum sought $260,000 for the reimbursement of medical school loans.

{¶ 6}   Dr. Hansing testified that although he was associated with the school as early as 1996, he was not directly involved with its operations until 2000, and in 2004 resigned from its board of directors.   The witness also testified that he invested a considerable sum of his own money into the medical school to keep it afloat and operational before it ceased operation in 2004.

{¶ 7}   The jury found in favor of the appellees on their claims in fraud and conversion. They found that Dr. Hansing owed Barsoum more than $227,143 in damages for fraud and conversion, and that he owed Pepin $226,944 on the same theories of recovery.   The jury also answered interrogatories and found in favor of appellant on claims in negligence, breach of

contract and embezzlement.   Subsequently, Appellant then filed a joint motion for a new trial

and for a judgment notwithstanding the verdict (JNOV), but the trial court overruled both

motions.

{¶ 8}   An appeal was taken from that judgment, but we dismissed the matter due to a

lack of jurisdiction.   See *Pepin v. Hansing*, 4th Dist. Scioto No. 11CA3416, 2012-Ohio–6295.

As we pointed out, several claims against several parties remained unresolved. Id. at ¶¶10-12.

On April 9, 2013, the trial court entered judgment in favor of appellant on the remaining counts

of the complaint and dismissed the remaining defendants.   This appeal followed.

I

{¶ 9}   We jointly address appellant's first two assignments of error because they both

involve the trial court's ruling on the motion for JNOV.   In particular, appellant claims that

insufficient evidence was adduced at trial to show that he had either defrauded appellees or

converted their money.   Thus, appellant concludes, the trial court erred by overruling his motion.

{¶ 10}  Under Civ.R. 50(B), when a verdict has been returned for the plaintiff, the trial

court, in determining whether to sustain a motion for judgment notwithstanding the verdict, must

decide whether the defendant is entitled to judgment as a matter of law when the evidence is

construed most strongly in favor of the plaintiff. *Daniels v. Fraternal Order of Eagles Aerie of

Tecumseh #979*, 162 Ohio App.3d 446, 2005-Ohio-3657, 833 N.E.2d 1253, at ¶12 (2nd Dist.,

2005); *Mynes v. Brooks*, 4th Dist. Scioto No. 08CA3211, 2009-Ohio-5017, at ¶25. A motion for

JNOV under Civ.R. 50(B) tests the legal sufficiency of the evidence. See, *Eastley v. Volkman*,

132 Ohio St.3d 328, 2012- Ohio-2179, 972 N.E.2d 517 at ¶25 (a motion for JNOV presents a

question of law); *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677,

679, 693 N.E.2d 271 (1998). Thus, a trial court must construe the evidence most strongly in favor of the non-moving party and deny the motion when some evidence exists to support the non-moving party's case. See *Texler*, supra at 679; *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 318, 662 N.E.2d 287 (1996); *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976). In doing so, a trial court may not weigh the evidence or judge witness credibility. *Osler v. Lorain*, 28 Ohio St.3d 345, 504 N.E.2d 19, at the syllabus (1986); *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 67-68, 430 N.E.2d 935 (1982).

**{¶ 11}** A trial court must deny a motion for JNOV if substantial evidence exists upon which reasonable minds could come to different conclusions on the essential elements of the claim. *Posin*, supra at 275; *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 109, 592 N.E.2d 828 (1992). Appellate courts then review a trial court's decision de novo. *Hicks v. Garrett*, 5th Dist. Stark No. 2011CA109, 2012-Ohio-3560, at ¶108; *Gindling v. Schiff*, 1st Dist. Hamilton No. C–100669, 2012-Ohio-764, at ¶14; *Britton v. Gibbs Associates*, 4th Dist. Highland No. 08CA9, 2009-Ohio-3943, at ¶7. With these principles in mind, we turn our attention to the fraud claim.

**{¶ 12}** The elements of fraud are generally stated as follows: (1) a representation or, when a duty exists to disclose, concealment of a fact; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. See e.g.,

*Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d

434, at ¶27; also see *Swanson v. Boy Scouts of Am.*, 4th Dist. Vinton No. 07CA663,

2008-Ohio-1692, at ¶17, fn. 2.

{¶ 13} We need not, and do not, address all six elements as it appears that no evidence is

in the record to establish that appellant made any representation directly to appellees regarding

the school's financial health, nor did they testify as to any during the trial.   Indeed, it does not

appear, after our review of the record, that any evidence was adduced to show that appellant had

any contact with the appellees.   Moreover, appellees did not cite any authority to support an

argument that appellant had a duty to disclose Kigezi's financial status to them, and we have

found none in our research.

{¶ 14} Even assuming, arguendo, that appellant had misrepresented the financial status of

the institution, or failed to disclose that fact while under a duty to do so, we also find no evidence

to show that appellant knew it was false or was reckless in that regard.   Indeed, appellant's

uncontroverted testimony suggests the opposite.   Dr. Hansing testified that he invested his own

money in the school to keep it afloat as long as he could.   This is not an action indicative of an

individual who seeks to defraud students.   Appellant and his colleagues may have arguably

made bad business decisions, but those decisions hardly rise to the level of fraud.

{¶ 15} Also, considerable testimony was adduced concerning the national government of

Uganda's $6,000,000 investment in Kigezi.   Dr. Hansing testified that his resignation was one of

the pre-conditions for obtaining that investment, and that is why he severed ties with Kigezi in

2004.   Appellees counter, of course, that the jury may simply have found this testimony

unpersuasive.   Nevertheless, it indicates a continued effort on the part of appellant to keep

Kigezi operational and illustrates a good faith, though perhaps misguided, belief, that he could keep the school functioning financially.

{¶ 16} Finally, whatever statement appellant may have made, or whatever disclosure he may have been required to make but did not, we see no evidence that he intended to mislead anyone. Appellees had the burden to prove intent to defraud on the part of Dr. Hansing. We, however, find no evidence to that effect in the transcript. Consequently, we agree with appellant that the trial court should have granted him JNOV on this claim.

{¶ 17} Additionally, we find even less evidence to support appellees' conversion claims. To prevail on a conversion claim, a plaintiff must show: (1) ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property right, and (3) damages. *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 11AP–929, 2012-Ohio-1378, at ¶8; *Mitchell v. Thompson*, 4th Dist. Gallia No. 06CA8, 2007-Ohio-5362, at ¶37; *Orebaugh v. Am. Family Ins.*, 4th Dist. Highland No. 06CA11, 2007-Ohio-3891, at ¶27.

{¶ 18} We believe that several problems exist with a theory of conversion in this case. First, even if we assume, arguendo, that such a claim would lie, it would lie against Kigezi rather than appellant. Appellees admitted that the student loan monies paid their medical school tuition at Kigezi and, at least in the first years, some of their living expenses. We find no evidence to show that student loan money made its way to appellant's hands.

{¶ 19} Appellees attempt to circumvent that problem by citing *Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.*, 93 Ohio App.3d 397, 403, 638 N.E.2d 1049 (10th Dist., 1994) for

the proposition that an individual president of a company could be liable in conversion for monies paid into the company at which he was employed. Appellees' reliance is misplaced, however. That case involved a situation, as the Franklin County Court of Appeals noted, that the company "employed those funds in a manner **inconsistent** with appellees' rights; and that appellant was in a position to direct, participate in, and **benefit** from the alleged conversion of the premium funds in which appellees held a beneficial interest." Id. at 402.

{¶ 20} Here, appellees paid their tuition money to Kigezi and no indication exists that money was used other than for that purposes. The fact that the school went out of business does not change that fact. More important, however, is that nothing shows that appellant received a "benefit" from that tuition. To the contrary, as Dr. Hansing testified both when called as on cross and during his own case, he lost a great deal of his own capital in an attempt to keep Kigezi financially solvent.

{¶ 21} The second problem with applying a conversion claim is that, as we noted above, no conversion of property can occur without some kind of "wrongful act." See *Dunlop*, supra at ¶8; *Mitchell*, supra at ¶37; *Orebaugh*, supra, at ¶27. Appellees' uncontroverted testimony is that the bank paid their student loan monies directly to Kigezi for their tuition. Students pay tuition all the time at colleges and universities – indeed, that is the nature of higher education in this country and around the world. A lawful act is not suddenly made wrongful simply because a school runs out of money and closes its doors. Moreover, we find no indication that these monies were under Dr. Hansing's control. Generally, when the torts of fraud or conversion are committed, they usually involve some gain, or expectation of gain, on the part of the tortfeasor. Here, there is no indication that Dr. Hansing financially gained, or even hoped to gain, from his

involvement with Kigezi. Indeed, the record suggests that he lost as much from his association with Kigezi as either of the two appellees. We emphasize that we are not unsympathetic to the appellees' plight and we concede that it is human nature to desire to hold someone responsible for this kind of situation. However, no evidence was adduced to support the claims that Dr. Hansing committed either fraud or conversion in this case.

{¶ 22} Accordingly, based upon the foregoing reasons, appellant's first two assignments of error are well-taken and hereby sustained.

### III

{¶ 23} Appellant's third and fourth assignments of error assert that the trial also erred by denying his motion for new trial. However, our ruling on his first and second assignment of error renders these moot and they will be disregarded. See App.R. 12(A) (1)(c).

{¶ 24} Having sustained the first and second assignments of error, the judgment of the trial court is hereby reversed. Pursuant to App.R. 12(B), judgment is hereby entered for appellant, on the claims of fraud and conversion.

JUDGMENT REVERSED AND
   JUDGMENT ENTERED FOR
   APPELLANT.

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be reversed and judgment be entered in favor of appellant.

Appellant to recover of appellees costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

McFarland, P.J. & Harsha, J.: Concur in Judgment & Opinion
                              For the Court

                                                    BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.