[Cite as *Bungard v. Jeffers*, 2014-Ohio-334.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

KENNETH R. BUNGARD, JR.,        :      Case No. 12CA26

      Plaintiff-Appellee,          :

                            :      <u>DECISION AND</u>
      v.                        :      <u>JUDGMENT ENTRY</u>

STEVEN E. JEFFERS,           :

                            :      **RELEASED: 01/28/14**

      Defendant-Appellant.      :
_____

<u>APPEARANCES</u>:

Mark A. Preston, Mann & Preston, LLP, Chillicothe, Ohio, for appellant.

Richard D. Dunbar, Dunbar & Fowler, PLLC, Parkersburg, West Virginia, and Ethan Vessels, Fields, Dehmlow & Vessels, LLC, Marietta, Ohio, for appellee.
_____
Harsha, J.

{¶1}    Steven Jeffers appeals from the jury's verdict awarding Kenneth Bungard, Jr. economic damages for injuries Bungard suffered after an automobile accident between the parties. Initially, Jeffers argues that he was entitled to fellow employee immunity as a matter of law under R.C. 4123.741 and the trial court erred by allowing the case to go to the jury. However, because Bungard did not properly make a motion for a directed verdict at the close of evidence, the trial court did not err by allowing the jury to decide the case.

{¶2}    Next Jeffers argues that the trial court erred by overruling his motion for judgment notwithstanding the verdict. We agree. Based on the evidence produced at trial, reasonable minds could only conclude that the parties' employer controlled the parking lot where the accident occurred and therefore it occurred in the zone of employment. And because Bungard was on his way to work when the accident

happened and it was necessary for him to pass through one of the employee parking lots to enter his place of work, his injury occurred in the course of and arising out of his employment and is compensable under the Workers' Compensation Act. By establishing the causal connection between Bungard's injury and employment, Jeffers was entitled to fellow employee immunity as a matter of law.

I. FACTS

{¶3} This case arose from an automobile accident in an employee parking lot. Bungard parked his truck in a Kraton Ploymers (Kraton) employee parking lot prior to starting his shift and was getting ready to exit his vehicle. Jeffers, also an employee at Kraton, pulled into the parking spot directly behind Bungard, failed to stop his automobile and rear-ended Bungard's truck.

{¶4} As a result of the accident, Bungard filed a complaint against Jeffers alleging negligence. Jeffers answered admitting that he was negligent, but asserted numerous affirmative defenses, including "the fellow employee immunity doctrine set forth in R.C. 4123.741." The case proceeded to trial on the issues of fellow employee immunity and damages. At the close of evidence, Jeffers argued that fellow employee immunity is a question of law and the case should be taken away from the jury. The trial court disagreed and the jury returned with a verdict in favor of Bungard and awarded him $723,751.13 in economic damages, but failed to award him non-economic damages. In arriving at the award, the jury found that the accident did not occur in the course of and arising out of Bungard's employment and therefore, Jeffers was not entitled to fellow employee immunity. Thereafter, Jeffers filed motions for judgment

notwithstanding the verdict and a new trial, which the trial court denied.  This appeal

followed.

## II. ASSIGNMENTS OF ERROR

**{¶5}**    Jeffers raises five assignments of error for our review:

1. THE TRIAL COURT ERRED IN SUBMITTING THIS CASE TO THE
JURY FOR A DETERMINATION ON THE QUESTION OF FELLOW
EMPLOYEE IMMUNITY AS THIS WAS AN ISSUE WHICH SHOULD
HAVE BEEN DETERMINED BY THE COURT AS A MATTER OF LAW.

2. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION
FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

3. THE TRIAL COURT ERRED IN INSTRUCTING ON THE ELEMENTS
NECESSARY TO ESTABLISH THE AFFIRMATIVE DEFENSE OF
FELLOW EMPLOYEE IMMUNITY, BY CHARGING THE JURY (1) AN
EMPLOYEE IS IN THE COURSE OF EMPLOYMENT WHILE
PERFORMING SOME REQUIRED DUTY DONE DIRECTLY OR
INCIDENTALLY IN THE SERVICE OF THE EMPLOYER; (2)
APPELLANT HAD THE BURDEN TO PROVE THAT THE EMPLOYMENT
WAS A DIRECT AND PROXIMATE CAUSE OF THE INJURY AND; (3)
AN INJURY ARISES OUT OF EMPLOYMENT WHEN IT IS
PROXIMATELY CAUSED BY SOMETHING THAT OCCURRED AS
PART OF THE ACTIVITIES, CONDITIONS AND RISKS OF THE
WORKPLACE.

4. THE JURY VERDICT IN THIS CASE IS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE AND SHOULD BE VACATED.

5. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION
TO[SIC] A NEW TRIAL.

## III. LAW AND ANALYSIS

### A. Submitting the Issue of Fellow Employee Immunity to the Jury

**{¶6}**    In his first assignment of error, Jeffers argues that the trial court erred by

allowing the case to go to the jury because the evidence established that he was

entitled to fellow employee immunity under R.C. 4123.741 as a matter of law.

**{¶7}**    R.C. 4123.741 states:

No employee of any employer * * * shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment * * * on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.

{¶8}    Jeffers bases his first assignment of error on the following exchange at the close of evidence between his trial counsel and the court:

Counsel: Your Honor, could I have just a moment to – for a motion?

The Court: Yes, Counsel?

Counsel: I believe, Your Honor, in this particular case, that all of the evidence demonstrates that this was in fact a workplace accident.  Mr. Jeffers was on the premises of his employer.  There's some question, I guess, as to whether or not it was exclusive, which seems to be a term that shows up in, you know, some of the cases or mo-- I guess, all of the cases, particularly from the Supreme Court.  But on the other hand, if the context of those cases and the circumstances of – of the various cases addressed by the Ohio Supreme Court are taken, you know, from the cases themselves, it's evident that all of those cases hold that accidents on the employer's premises between employees are treated as fellow employee -- or, I'm sorry, are treated as workers' compensation accidents.

        Now, true, most of those focus on the situation as it would relate to an injured employee, but this is a situation that goes one step further, and turns that around to the fellow employee immunity standard.  And I -- I would submit that it -- it really is a question of law that should be applied, and this case should be taken away from the jury at this point.

* * *

The Court: Well, the Court – I'm going to let the Court – the jury make the decision.

{¶9}    Reasonably, one could construe this statement as a motion for a directed verdict.  However, it seems equivocal and Civ.R. 7(B)(1) requires that a motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  And because Jeffers does not make any assertion on appeal that we should

treat counsel's statement as a motion for a directed verdict, we decline to do so. Accordingly, because Jeffers did not properly make a motion for a directed verdict, the trial court did not err by submitting the case to the jury and we overrule his first assignment of error.  *See* Civ.R. 50(A)(4).  Nevertheless, because he presents the same argument in his second assignment of error, we still reach the merits of his argument below.

### B. Motion for Judgment Notwithstanding the Verdict

**{¶10}**  In his second assignment of error, Jeffers asserts that the trial court erred by denying his motion for judgment notwithstanding the verdict because he was entitled to fellow employee immunity as a matter of law.

**{¶11}**  A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the sufficiency of the evidence and therefore presents a question of law which we review de novo.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 25.  A motion for a judgment notwithstanding the verdict should be granted if the trial court, after construing the evidence in favor of the non-moving party, finds that upon any determinative issue reasonable minds could come to but one conclusion and the moving party is entitled to judgment as a matter of law. *Vance v. Consol. Rail Corp.*, 73 Ohio St.3d 222, 231 652 N.E.2d 776 (1995); *Pepin v. Hansing*, 4th Dist. Scioto No. 13CA3552, 2013-Ohio-4182, ¶ 10.  In doing so, a trial court may not weigh the evidence or judge witness credibility.  *Pepin* at ¶ 10.

**{¶12}**  Because "injury by fellow servant" is an affirmative defense under Civ.R. 8(C), Jeffers carries the burden of proof on the issue by a preponderance of the evidence.  *See Fossett v. Fossett*, 4th Dist. No. 91CA19, 1992 WL 129316, *5 (June 11,

1992) (Harsha, J., dissenting). Thus, he had the burden to establish that Bungard's injury occurred in the course of and arising out of his employment.

{¶13} "The coming-and-going rule is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arise[s] out of' the employment relationship so as to constitute a compensable injury" under R.C. Chapter 4123. *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 119, 689 N.E.2d 917 (1998); *Maienza v. Conrad*, 4th Dist. Pickaway No. 00CA08, 2000 WL 1468503, *2 (Sept. 20, 2000). Generally, the coming-and-going rule provides that "'an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between injury and the employment does not exist.'" *Ruckman* at 119, quoting *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 68, 572 N.E.2d 661(1991); *Maienza* at *2.

{¶14} Neither party disputes that Bungard was a "fixed situs" employee and thus subject to the coming-and-going rule. Nevertheless, based on our holding in *Maienza*, Jeffers argues that an exception to the coming-and-going rule exists and Bungard is entitled to participate in the Workers' Compensation Fund as a matter of law. Therefore, he contends that he is also entitled to immunity as a matter of law.

{¶15} In *Maienza*, we recognized that "'coming-and-going' cases have developed a 'unique group of tests.'" *Maienza* at *2, quoting *Fisher v. Mayfield*, 49 Ohio St.3d 275, 280, 551 N.E.2d 1271 (1990). This is so because workers' compensation cases are, to a large extent, very fact specific and no one test is applicable to each and every factual possibility. *Maienza* at *2, citing *Ruckman* at 122. Accordingly in *Maienza*

we applied a "unique" coming-and-going test as set forth in *Donnelly v. Herron*, 88 Ohio

St.3d 425, 727 N.E.2d 882 (2000):

> "[a]n employee who, on his way from the fixed situs of his duties after the
> close of his work day, is injured in a collision of his automobile and that of
> a fellow employee occurring in a parking lot located adjacent to such situs
> of duty and owned, maintained and controlled by his employer for the
> exclusive use of its employees, receives such injury 'in the course of, and
> arising out of' his employment, within the meaning of that phrase in the
> Workers' Compensation Act * * *."

*Donnelly* at 429, quoting *Marlow v. Goodyear Tire & Rubber Co.*, 10 Ohio St.2d 18, 225

N.E.2d 241 (1967), syllabus.

{¶16} Thus, applying *Marlow* to the facts of the case we found that because

Maienza was injured in an automobile accident following work with another employee

on an access road owned, maintained, and controlled by their employer for its exclusive

benefit, he was entitled to participate in the workers' compensation fund as a matter of

law. *Maienza* at *3.

{¶17} Here, the parties agree that the accident occurred in a parking lot owned

by Kraton, adjacent to Bungard's fixed situs of employment; however it was outside the

fence and gated area of the plant.  They also agree that the lot was for employees with

at least one space reserved for visitors and that sometimes pizza delivery drivers,

spouses and contractors parked in these spaces.  There was no gate or other physical

barrier restricting access to this lot.  Furthermore, Bungard admits that the only other

available parking for employees was another employee lot on Kraton's premises on the

other side of the plant.  Thus, the only real dispute is whether these facts establish that

Bungard's injury occurred in the zone of the employment.

{¶18}  At trial, Jeffers testified that the parking lot was for "employee parking" and owned by Kraton.  He explained that at the time of the accident there was a separate parking lot indicated by signs for subcontractors, as well as visitors.  In addition, Jeffers also stated that that there is one visitor parking spot in the lot and "if somebody parks there that's not supposed to be there, the guard comes out and asks what's going on * * *."  He stated that he had once been stopped and questioned by the guards.  While working late Jeffers explained that he went out to his car in the employee parking lot and the guard did not recognize him and asked what he was doing.  Jeffers further testified that employees had to pass through one of the two employee parking lots to gain entry into the plant.

{¶19}  Jeffers was shown Exhibit 305, a photograph of the parking lot.  He testified that "all of the premises to the top of the photograph * * * from Highway 618," which included the access road leading to the parking lot, were also owned by Kraton.

{¶20}  Bungard testified employees parked in the lot, along with "pizza delivery people," and visitors, particularly spouses dropping things off to employees.  He explained that there was no gate restricting access to the lot and contractors sometimes parked in the lot as well, especially if the visitor lot was full.  Bungard further testified that he had no reason to believe that Kraton did not own the parking lot.

{¶21}  Randall Mills, a Human Resources Field Representative at Kraton, testified that the parking lot where the parties' accident occurred is for "Kraton personnel."  He stated that it is not monitored by video, but a "guard force" will make rounds through the lot two to three times per shift "to make sure everything's safe, nobody's breaking into automobiles."  Mills also stated that Kraton has the right to

inspect any of the employee's vehicles parked in the lot, if they "suspect stolen property, firearms, alcohol or controlled substances." Mills explained that the only alternative employee parking was a lot on the north side of the plant that was subject to same controls as the lot where the accident occurred. He explained the employees usually parked in the lot closest to the area of the plant where they worked and had to pass through one of the lots and a guard shack to enter the plant.

{¶22} Mills further testified that there are several visitors' parking spots "in front of the administration building, which is just below that parking lot." He explained that right next to the entry gate to the plant there are "a couple slots for various deliveries," including pizza delivery. On cross-examination Mills clarified that the parking lot where the accident occurred was for "just employees," but there were "designated parking spots" for visitors dropping things off for employees also.

{¶23} Jack Sprung, Bungard's supervisor at Kraton, also testified that the parking lot was "a large parking lot * * * that the employees all parked in." He testified that there were also spaces in the lot for visitors near the "guard shack," and separate visitor parking in front of the administration building. Sprung explained that the only other employee parking was a parking lot on the "north side" of the plant and agreed that the lot that was "essentially the same * * * in terms of dedicated parking for employees" and the employees typically parked in the lot that was closer to their area of work in the plant.

{¶24} Dave Davis, a Kraton employee, testified that the parking lot where the accident occurred is "a Kraton employee parking lot" and did not think visitors were permitted to park there. He also testified that there was a visitor parking lot in front of

the administrative building where the contractors park.  Davis further explained that

people do park in the lot to drop things off to employees, including pizza delivery

drivers.  He explained however, that the pizza delivery drivers and other people

dropping things off to employees typically do not park their vehicles and leave.  Rather,

they park in the parking lot and then walk to the main gate and ask the guard to call the

employee to meet them.  He clarified that "visitors can't park [in the lot] and then walk

into the plant, as far as I know."

{¶25}  Even construing the evidence in favor of Bungard, reasonable minds could

only conclude that Kraton owned, maintained and controlled the parking lot where the

parties' accident occurred for the exclusive use and benefit of its employees.  Jeffers

testified that Kraton owned the lot and Bungard testified that he had no reason to

believe otherwise.  The evidence also showed that the parking lot was adjacent to the

plant entrance and the employees had to pass through one of two employee parking

lots to enter the plant.  Mills testified that there were guards that made rounds of the

parking lot several times per shift to ensure the employees' automobiles were safe and

only authorized persons were in the lot.  Both parties and several other witnesses

testified that the parking lot was for employees, but there was at least one spot reserved

for visitors to drop things off to employees.  However, Davis explained that these visitors

were not permitted to park and enter the plant.  Rather, they had to approach the gate

and request that the employee meet them there to drop off the items.  Even if we

construe the testimony to mean that contractors or other visitors were permitted on

occasion to park their vehicles in the parking lot where the accident occurred, this does

not defeat the overwhelming evidence that the parking lot was designated by Kraton as

one of two exclusive parking areas for its employees.  In light of the fact there was a separate lot for visitors, incidental use by visitors of the employee parking lot does not transform its character.

{¶26}  Bungard urges us to conclude that there were "no controls" over the parking lot because there were no visible restrictions, gates or key codes to restrict access, however we disagree.   Control is the "'direct or indirect power to direct management and policies of a person or entity * * *.'" *Jobe v. Conrad*, 2nd Dist. Montgomery No. 18459, 2001 WL 62516, *3 (Jan. 26, 2001), quoting *Black's Law Dictionary* 330 (7th Ed.1999); *Foster v. Bur. of Workers' Comp.*, 2nd Dist. Montgomery No. 25657, 2013-Ohio-4075, ¶ 10.  The evidence here clearly showed that Kraton controlled the parking lot where the accident occurred.  Kraton owned the lot and had guards patrolling it to ensure that the employee's cars were safe and no one was there who was not supposed to be.  In fact, Jeffers himself testified that he had once been stopped by the guards in the parking lot because they did not recognize him.  The evidence also showed that Kraton had the right to inspect the employee's vehicles parked in the lot.

{¶27}  In further support of his argument Jeffers cites to numerous cases in which the plaintiff was injured in or near the employer's parking lot and was entitled to workers' compensation benefits because the injury occurred in the "zone of employment."  And even assuming, arguendo, that Jeffers failed to establish the requirements of the "unique" coming-and-going exception set forth in *Maienza*, there is no doubt that Bungard's injury occurred in the zone of employment.

**{¶28}** "The 'zone of employment' is another exception to the coming-and-going rule and allows employees to recover for injury sustained in the place of employment, or in the areas thereabouts, so long as those places are under the control of the employer." *Moss v. Conrad*, 157 Ohio App.3d 47, 2004-Ohio-2065, 809 N.E.2d 36 ¶ 28 (4th Dist.). Again, control is the "'direct or indirect power to direct management and policies of a person or entity * * *.'" *Jobe* at *3, quoting *Black's Law Dictionary* 330 (7th Ed.1999); *Foster* at ¶ 10. Generally, an injury is compensable if it occurred in the zone of employment because there is a sufficient causal connection between the injury and the employment to warrant compensation. *See MTD Products*, 61 Ohio St.3d at 68, 572 N.E.2d 661(1991).

**{¶29}** The facts of this case are similar to *Pursley v. MBNA Corp.*, 8th Dist. No 88073, 2007-Ohio-1445, which also involved a car accident between two coemployees in an employer owned parking garage. In *Pursley* the injured employee filed suit against the employer. The trial court granted summary judgment in favor of the employer, finding that workers' compensation was the injured employee's sole remedy. *Pursley* at ¶ 6.

**{¶30}** On appeal, the court agreed and held that workers' compensation barred Pursely's negligence claims against her employer because her injuries occurred in the zone of employment. *Id.* at ¶ 15. Applying this exception to the coming-and-going rule the court found that the employer "owned the parking garage; therefore it had control over the scene of the accident. There was no alternative off-site parking available; therefore, Pursley had to park in a company-owned lot. The fact that she picked this parking lot over another company-owned parking garage is of no relevance." *Id.* at ¶ 14.

The court reasoned that the fact that an employee "'had two ways of getting to work from the parking lot was not relevant in this case in determining whether employer's parking lot was within worker's "zone of employment." * * * The point appears to be illogical.  If an employer provides two accesses and the employee has a choice, an injury on either may not be compensable because the other was available for use.'" *Id.*, quoting *Meszaros v. Legal News Publishing Co.*, 138 Ohio App.3d 645, 648, 742 N.E.2d 158 (8th Dist.2000).  Accordingly, the court held that because Pursley was injured in an employer owned garage, she was "clearly within the zone of employment when she sustained her injury."  *Id.* at ¶ 15.

**{¶31}**  Here, we have already concluded that Kraton controlled the parking lot where the accident occurred.  The evidence showed that the parking lot was on premises owned by Kraton, next to Bungard's fixed situs of employment and that the employees had to pass through one of two employee parking lots to enter the plant.  Moreover, the parking lot was patrolled by security guards two to three times per shift to ensure the employee's cars were safe and there were not unauthorized persons in the lot.  And following the rationale in *Pursely,* the fact that Bungard had a choice of another employee parking lot on the employer's premises is irrelevant to determining whether his injury occurred in the zone of employment.  Therefore, reasonable minds could only conclude that Kraton controlled the parking lot where the parties' accident occurred and thus it was also in the zone of employment.  Because Bungard was on his way to work and it was necessary for him to pass through one of the employee parking lots to enter his place of work, his injury occurred in the course of and arising out of his employment and is compensable under the Workers' Compensation Act.

**{¶32}** Bungard also cites to R.C. 4123.74 and argues that because Jeffers failed to present any evidence that Kraton "pa[id] money into the workers compensation fund or me[t] the self-insured requirements," he is not entitled to fellow employee immunity.

**{¶33}** However, R.C. 4123.74 deals with employer immunity and is distinct from fellow employee immunity under R.C. 4123.741. And because R.C. 4213.741 does not require the fellow employ to establish his employer's compliance with the workers' compensation fund, we reject Bungard's argument. Because Jeffers established that he was entitled to immunity under the terms of R.C. 4123.741 as a matter of law, the trial court erred by denying his motion for judgment notwithstanding the verdict. Accordingly, we sustain his second assignment of error.

## IV. CONCLUSION

**{¶34}** Because Jeffers established that he was entitled to fellow employee immunity under R.C. 4123.741, we sustain his second assignment of error and reverse the trial court's decision. We overrule his first assignment of error because he did not properly make a motion for a directed verdict. The issues raised in Jeffers' third, fourth and fifth assignments are rendered moot by our resolution of his second assignment of error and therefore we decline to address them. *See* App.R. 12(A)(1)(c).

JUDGMENT REVERSED
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
         William H. Harsha, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**